We will continue, then call the next case. Animal Science Products,Inc.v.China Minmetals This isn't an appellate case. It's a meeting of the American Bar Association. You guys know how to draw a crowd, I see. Yeah, we have to get to places. Sorry. That's what my wife has always said about me. Okay, let's proceed. Mr. Isaacson? Yes, Your Honor. I'm William Isaacson from Boyce, Shiller & Flexner for the appellants. I'd like to reserve three minutes for rebuttal. Very well. Your Honor, the district court decision dismissing the complaint should be reversed because it's legally erroneous and will jeopardize criminal and civil antitrust enforcement against international cartels. It creates two new requirements under the FTAIA, an importer requirement and an intent-to-effect requirement. Both these standards contradict the plain language of the statute, are not supported by any prior decision, or adopted based on the district court's own sua sponte legal analysis. In defending the district court's analysis, defendants have been unable to identify any precedent supporting these standards or to explain why they would not jeopardize enforcement against what's been called the ultimate evil of antitrust cartels. There are two ways the FTAIA does not apply. Can I ask you a threshold question? Relying on our Tercentro case, the Chief Judge Brown assumed that the FTAIA was jurisdictional and therefore looked at it under the appropriate 12b1 standard. If we disagree based on intervening Supreme Court law, do we have to send it back to have him view it through a different prism? That would be 12b6. No, Your Honor, because he has interpreted the statute, whether it's been jurisdictional or whether it's on a motion-to-dismiss stage, and made certain legal errors. Those should be corrected now rather than going back and coming back here. We'll be back here discussing these same legal issues, which would not be efficient. The first requirement that's at issue here is the import trade exception to the FTAIA. The plain language of the FTAIA exempts, quote, import trade or import commerce from the statute. The district court erred by creating a requirement beyond import commerce by holding that defendants must also be considered importers. The second exception is the domestic injury exception. That applies where foreign conduct has a direct, substantial, and reasonably foreseeable effect on domestic commerce. The district court erred here by grafting on an additional intent-to-effect standard, which was not simply an intent standard, but intent to uniquely affect U.S. commerce. It's a very difficult statute for me to work through. That has been said by other courts. But you seem to be arguing the elements of the statute and not whether it's jurisdictional or whether the statute itself goes to the merits. I agree, Your Honor. Or are you leading up to that? I agree that this is. Or do you prefer to skip over that? No, I agree that as I just, I think, responded to the last question, this is a case about the elements of the statute. However, that doesn't change the legal errors below or the need for the court to address those issues here today. Okay. I thought that your argument would be if this is not, if it's not jurisdictional but rather a substantive statute or a statute that has many merits, then you win immediately and the case has to go back to the district court. I do not think I necessarily win immediately. You win the case, but you get a hearing. Right. It would go back and be decided on a 12B6 standard. Right. And this court would, the district court, absent direction from this court, would decide that 12B6 case based on two erroneous and frankly dangerous legal principles that the court has adopted. My impression was that this case was being dealt with in the summary judgment style manner. In other words, it was very extensive, a very lengthy opinion and an analysis of the various components of the statute, and then the ruling was that it was jurisdictional. Is that correct? I do not think that's correct. I think we went off into a new area of civil procedure here, Your Honor. Summary judgment. I thought that was the court's ruling. I don't mean that that's correct or not. Summary judgment would have involved discovery and the opportunity to address conflicting and disputed issues of fact. That did not happen here. Isn't it 12B6 that we look at the face of the complaint, right? Yes. There's a lot more that happened here, right? There's a lot more that happened here, and we've gone through, this case was filed in 2005, Your Honor. We have gone through a series of procedural hurdles, and we are at the motion to dismiss stage. If we go back under 12B6 with no direction from this court, we will be operating under incorrect legal standards set forth in this opinion, which need to be addressed. Ultimately, Judge Brown decided that you lose on jurisdiction grounds. Yes. Is that right? Yes. Why was he wrong? He was wrong both because he interpreted the FTAIA incorrectly because of these two legal standards I've been addressing. Whether or not it's an elements of the claim issue or a subject matter jurisdiction issue, the FTAIA requirement for import commerce was plainly met here. Instead, he grafted on a new requirement that said you have to be the main force behind the physical movement of goods in the United States. You have to be what he called an importer, and that even if there are direct sales into the United States of millions or indeed billions of dollars of product without a detour, he said, that that would not meet this requirement. This court has said, has it not, that the dispositive question is whether the defendants, not the plaintiffs, are importers. You can find reference to importers. I do not think you can find that the court has said that that is the dispositive question. I don't think that was presented to this court before. I don't think it's been presented to any court before because that's not the language of this statute. The language does not use the term importer. Sometimes when you start to talk about import commerce, someone might start to use the term importer, but that is not what we're talking about, much less focusing on who hired the carrying vessel. This is a blanket invitation for international cartels to impact U.S. commerce significantly because they can sell into the United States as long as someone else arranges the carrying vessel. No court or anyone in the antitrust division has ever accepted such a proposition. The Antitrust International Guidelines talk about direct sales of the United States being a straightforward application of jurisdiction in the United States, and I don't think any court has ever questioned that before. The same would be true with respect to the direct and substantial and foreseeable effect standard. The district court adopted what it called an intent to effect standard, and that standard said, the district court said, the plaintiffs must show that international cartels charge U.S. purchasers more than foreign purchasers. In other words, even if an international cartel has a meeting about price fixing where product will be going to the United States as long as they are imposing the same sort of price fixing to the United States as the rest of the world, that cartel would be immune from antitrust enforcement, according to the district court. Again, there is no precedent for that, and it is difficult to underestimate the impact that there would be on enforcement of international antitrust laws. Mr. Isaacson? Yes. I don't want to throw you off your current line of argument, but I just wanted to explain to you the source of my question moments before. What I had in mind was the language of this court in Turri Centro, quote, the dispositive inquiry is whether the conduct of defendants, not plaintiffs, involves, quote, import, trade, or commerce. I think you'll find that at page 303 of volume 303, after the third. I just wanted to tell you where the question came from. And I understand the reference. But in Turri Centro, there was no argument being made or considered that you had to be an importer responsible for the carrying vessel. Turri Centro, in fact, involved sales that happened completely outside of the United States. But at Turri Centro, at 305, I believe, said, the straightforward proposition that's before this court, there is a distinction between anti-competitive conduct directed at foreign markets that only affect the competitiveness of foreign markets and anti-competitive conduct directed at foreign markets that directly affects the competitiveness of domestic markets. The antitrust laws apply to the latter sort of conduct and not the former. This is a straightforward case. It says in paragraph one of this complaint, we are not concerned with foreign sales. The complaint is replete with allegations and supporting documents, because of the unique procedural posture here, because we were asked to attach support to this complaint. This complaint is unique in having support for the fact that the defendants made hundreds of shipments of magnezyte to the United States. The steel industry was impacted, that a major market for this conspiracy was the United States, that according to a multiple... Let me stop you for a moment, because your time is almost up. I think you're just getting into the essence of your argument. So I'd like to add, can we make it three to five minutes? To be three minutes. Let's hear three minutes of your argument, both sides. All right. As outlined in the complaint, prices in the United States, according to an econometric analysis by an expert we hired, increased... Magnezyte prices increased in the United States by an average of more than 21%, due to the price-fixing conduct of this cartel. Over 80% of the U.S. market is coming from China. Over 70% of Chinese sales of magnezyte are part of this cartel. This is probably somewhat off-base, but I... You know, there are other cartels that fix prices, definitely fix prices, and then they send products to the United States, or oil cartels, diamond, and other natural resource types of cartels that fix prices. Are they all subject to a lawsuit? I mean, do you have jurisdiction to file claims against those cartels? The Antitrust Division would tell you, yes, that's what we do. And we've listed the number of cartels that the Antitrust Division has prosecuted criminally from all the countries of the world for a wide range of products. The complaint in this case, you cannot find... Have cases against cartels been brought under the AIA statute? Is that what you call it, the AIA? FTAIA. They're not brought under this statute because before this decision, no one considered this case to have raised FTAIA issues because it involved only sales in the United States. FTAIA issues have only arisen such as in Empegran where someone says, I want to sue in the United States because I bought in Australia or I bought in Japan, and there was a worldwide cartel. My question was trying to get at whether there is a history of jurisdiction in the United States for claims like yours. Yes, and that is outlined in our opening brief. I know the Seventh Circuit had some struggle and in an en banc evenly divided on the question whether, not evenly, it was five to four, I believe, in favor of jurisdiction. A decision that pretty much goes against your view. On the issue of whether the FTAIA is jurisdictional or not, no court has struggled with whether there is a U.S. antitrust claim for products sold into the United States that is absolutely unique and unheard of in this case. These cases about the FTAIA come up when someone claims damage in a foreign market. That's why when this issue came up, it wasn't even an issue raised by the defendants initially. It was the district court's sua sponte suggesting that the FTAIA would be applicable here. There is no authority for where there are millions of dollars of sales into the United States that are the sole subject of the complaint for the U.S. not to assert antitrust jurisdiction. And to assert otherwise would have a severe ripple effect, not just on private attorney general enforcement of the antitrust laws, but on criminal prosecution of cartels, which is the Justice Department antitrust division's highest priority. I cannot emphasize to you enough that what has happened here is unique and unheard of and would be a serious change in law. Can you suggest then that the Seventh Circuit got the issue wrong? No. The underlying issue that the Seventh Circuit was deciding was someone making a claim based on foreign markets. Then the FTAIA issue comes in, and they had to decide whether it was an elements of claim issue or a subject matter jurisdiction issue. The Seventh Circuit would not have spent any time on the issue if that had been a complaint about price fixing of products coming into the United States. The Seventh Circuit, in a closely divided decision, happened to get the elements of the claim versus the subject matter jurisdiction issue wrong only because we know that from the Supreme Court in Morrison now. It didn't mean it wasn't a difficult issue. But the FTAIA issue up until today has only come up where people claim antitrust injury in foreign markets. Price fixing of products sold into the United States, brought into the United States under EMPA grant, the U.S. Antitrust International Guidelines, all cartel enforcements, and this case, and the language in Turo Central, just reciting the standard provisions of antitrust law and the import requirements, import commerce requirement, all indicate that this complaint should not have been held up by 12b-1, by 12b-6, or 12b-anything. What is your request you're seeking? We think the district court decision should be reversed and the case, after five years, should be ordered into general discovery to sort out the factual disputes between us so that eventually we can have a trial to sort out those factual disputes. Thank you, Mr. Anzic. We'll get you back on rebuttal. Thank you. Mr. Kaplan. You have an extra three minutes, I guess. Thank you, Your Honor. Divide it up however you wish. I'll be sharing it with our co-counsel. I was actually going to say good morning, but now it's good afternoon, so please, the court. I am Jonathan Kaplan, representing the Sino-Steel Defendant, Sino-Steel Corp, and Sino-Steel Trading, and Leoning Zhai. I have some remarks I want to go through, but just briefly to kind of hop into where the discussion left off. I think there is some confusion here because I don't really think there's any new law that's been created. I think the problem, and I don't think there's any danger to the ability to enforce any trust actions in this country. I think the issue is there are some particular problems with this complaint, with this case. That's what the district court really got into, and I think the relief that was requested at the end by Mr. Isaacson really gets to the heart of the matter, which is that they're looking for discovery as to do they have a claim here. And I think the problem is, that was identified at the district court, that there are allegations in the complaint which, on their face, are conclusory. They've had multiple attempts to beef up those allegations. They've not been able to do it, so I think the issue is a pleading issue, a factual issue here, and it's a little... Is it a Twombly type of issue, or is it a jurisdiction issue? Right. Okay, so I think there are several issues going on here. So I think Twombly is involved because under the law of this circuit, under Tercentro, the FTIA is a jurisdictional issue. That's the law as we understand it, and that's the law that we apply here. So being that it's jurisdictional, there is a threshold level that has to be exceeded in order to get past the FTIA, because that precludes application of the Sherman Act to foreign defendants, except in certain limited circumstances. The importer issue or the involved in import trade issue, and then you have, if you're not that, you get into this direct, substantial, foreseeable issue. So those are the two problems. All of those, by the way, and I'm sure the Court's aware, dealt with in detail by the district court. And so I don't think there's any issue... But the issue is, what if, based on intervening Supreme Court precedent, we say it's not jurisdictional, instead it's a statutory bar? Did the district court get it right, or did the district court have to view it in a prism under, you know, a 12b-6 as opposed to a 12b-1 standard? Well, Your Honor, the original complaint was dismissed on 12b-6 grounds as well. So there was a problem with the pleadings under Twombly, the plausibility, because now I think we're... in the allegations, where under 12b-1, the court said it could be facial or factual and dismissed the complaint and said, if you come back, we're going to look at it on a factual, or be prepared for a factual. But those 12b-6 grounds also exist because under Twombly, and to get... Even if the FTIA is a statutory issue, there is jurisdiction, but the question is, are we going to reach the Sherman Act and get through the FTIA? The issue is, is there a plausible allegation of what's required to get past the FTIA, whether they're importers involved in import trade, or if not, the substantial direct foreseeable? And so I think the answer, Your Honor, is that it would still fail for the reasons that Judge Brown went through, and I'll highlight some of them. But I think, just going back to the original complaint, when it was dismissed, it was a Twombly problem as well as a jurisdictional problem, and Judge Brown pointed out that there were conclusory allegations and really no linkage. I think that's the key thing from our perspective. There was no connection from general allegations that, yes, I don't think there's any dispute, a lot of magnesite is mined in China and is exported from China, and a lot of the magnesite in the United States comes from China. But that's kind of where the allegations ended, and I think that's where Judge Brown, quite correctly, asked for more information. You know, what is the connection between this alleged collusive activity and actual sales? Isn't that, though, what you get as a result of discovery? I mean, how much do you have to really put in the complaint to get over that initial hump? So, Your Honor, I think the answer is you have to put in enough to make it plausible, and I think that you've hit on one of the key issues here. But if you believe what the complaint says, there was a cartel that conspired together to fix prices that resulted in damage to the United States' borders. So, and they asked for more discovery, where they might be able to depose some of the officials of the various, or members of the cartel. I'm just wondering, really, how much do you have to put in that complaint? Well, Your Honor, I think the issue isn't so much that there were certain allegations, that there were meetings, and they got together to set prices. That's only one piece of what the issue is here. The other issue is there has to be some sales activity in the U.S. that is, in some way, connected to these allegations of collusive behavior. And what is significantly missing here is a single sales contract, which has been tied by the plaintiffs to any kind of collusive activity. And you have to keep... Was it disputed that the United States gets a huge percentage of its magnesite from China, and that these individuals are the major exporters into the United States of magnesite? Yes, Your Honor, I think that is disputed. I think the issue is that some of these defendants are involved in the magnesite industry, but what's not established is who is actually importing the magnesite into the U.S. There is declaration testimony went in that my clients purchase magnesite that's mined by entities in China, and they largely sell it to brokers, and it goes all over the world. And, in fact, the plaintiffs purchase... Was there any plaintiffs in this case alleged that they are importers and that they were harmed by the price fixing by the defendants? There is. There are allegations. There are what Judge Brown, I think, quite correctly characterizes, conclusory allegations of that in the complaint. But this entity, Possel, from whom they purchased an assignment for $100, has not provided them, even after we asked for it and they issued subpoenas, not a single sales contract. And that was one of the points that Judge Brown pointed out, that given the volume of sales activity over the period of years, not a single sales contract has been identified. And, in fact, the only sales contracts that are in there are contracts that the defendants put in in connection with the arbitration motion, because there was a pending motion at the outset of the practice before the district court that any claim would have to be arbitrated. Mr. Kaplan, is this really a Trombley problem or is this a situation in which, classically, some discovery is in order before we find out whether there's an assertable or dismissible claim? Well, I think the issue, there is a Trombley problem and it is not, and they are not entitled to the discovery for the following reason, Your Honor. They have made an allegation that, the allegation about the price fixing has to get through the FTIA. And, by the way, the importer status, I think, is not really at issue here. It's more about the import activity. But the FTIA issue that they have, the threshold they have to overcome to bring this claim, is subject to the Trombley plausibility pleading and that's where Judge Brown really dug in and asked for the proofs that haven't been forthcoming. So I think there is a relationship between the Trombley requirement and connection with what you have to plead in the complaint to get over the FTIA bar. Maybe you could clarify something. I'm sorry, did you have a follow-up question? No. Okay. On pages 33 and 34 of your brief, you say that the plaintiffs mischaracterized the standards applied by the District Court. In particular, I think you're talking about the intent to effect. They clearly, the District Court clearly mentioned intent to effect. Are you saying that they didn't actually apply that standard or that was just, I think in a sentence actually following from 33 to 34, you said, well, they were just citing to another case. Yes, Your Honor. So there's no question that some of the language that Judge Brown used made reference to this intent to effect as an element of the standard. It's in there, right? It is in there. And I think it's a little bit, well, I think it's a lot of much ado about nothing because when you look at what Judge Brown did in the analysis, and he went through a number of the, almost all the allegations in some detail, and he looked objectively, is there evidence here to substantiate what he perceived as a conclusion allegation into a factual allegation that was sufficient to show some sort of connection between the, between sales activity and the alleged collusive activity. So I think he was really trying, the judge was really trying to capture the language from the Hartford case where in Hartford they talked about meant to produce and did in fact produce some substantial effect in the U.S. I think it was somewhat inartful, but Judge Brown was looking for some direct substantial effect. I see I'm out of time. Thank you very much. Thank you. Mr. Wiener. Good afternoon, Your Honors. I am Michael Wiener, and I represent the China National Minerals and China Min Metals defendants. The summary of my argument is very brief. It's five words. Judge Brown got it right. To begin with, I think that the question is jurisdictional. The argument that it's not jurisdictional contradicts the law of the circuit in Terracentro. It contradicts the law of the Ninth Circuit in LSL biotechnology, the LSL case as well as the Seventh Circuit, and it contradicts the legislative history of the FTAIA. What the intervening cases tell you to do is to look at the legislative history, and here it's clear that the FTAIA is a jurisdictional statute. So, in addition, this argument was raised. What is it about the history that makes this a jurisdictional statute? The legislative history refers to the FTAIA controlling the jurisdiction, of course, to hear Charminet cases. I think we cite to those elements in our brief, and it is very clear. Well, I don't know. I mean, you know, the Supreme Court in its subsequent decision said, yeah, people use the word jurisdiction totally responsibly, maybe loosely. So, I guess that maybe it could be set up Congress as well, but okay. Right. And this is also an argument that was raised for the first time on appeal. So, I think there's an issue as to whether or not the argument is waived. But, you know, you can't waive jurisdiction that easily. The court always has a responsibility to assure itself that it has jurisdiction. But when the, but this is sort of the opposite. It's looking at whether there's not jurisdiction. I think the time to raise this issue should have been before it was dismissed on these grounds. And I think we addressed that in the brief as well. But, yeah, I think that the decision process that Judge Byron entered into, which is very similar to the decision process that Judge Pollack recently addressed in the McCafferty case, is just the right one. Is the alleged conduct trade or commerce with foreign nations? Well, it is here. But is it import trade or commerce? And here, let's just remind ourselves that paragraph one of the complaint, and as counsel just repeated, states that the complaint does not relate to foreign sales. But that's all we have here. The plaintiffs, the defendants in this case, are not importers. Importers is, as Judge Pollack pointed out, a term that's used in Toro Centro. In fact, it's in this, the law of this circuit. The dispositive inquiry is whether the defendants directly brought items or services into the United States. There is nothing in the record to suggest that defendants in this case did do that directly. And this was also in 2008. Couldn't a defendant still direct a conspiracy at the U.S. import market without functioning actually as the importer? I mean, they could be, you know, another cog, I guess, in the machine. But they have to actually be the importer? It can only be the. If they are, if they are the importer, then the FTA, then it's, then we're engaged in import, then the defendants are engaged in import commerce and the FTAIA does not apply. If they are not the importer, if they're not directly, if they're not the prime mover in bringing the products into the United States, then we look at the effects test, which they've eschewed reliance on that. They've told us that this case only deals with import commerce. And to the extent that they haven't shown that, then I think this case is over. Judge Brown decided in 2008 that they had not shown that. He gave them an opportunity to replead. They did that. And in this opinion, he gave them another opportunity to replead to show that, in fact, they were importers. And they've decided not to, that the defendants were, were importers. And they've decided not to do that and, and brought this appeal. But, we don't, I don't want to interrupt the flow of your argument, but are you going to be able, are you going to be getting to the, the, the second piece of the puzzle, whether Judge Brown got it right in talking about intent? Sure. Well, okay. I can, I don't, I don't mean that you should move to that now if you're not interested in doing so, but that seems to be a large piece. Your Honor, is interested in hearing about it. I certainly will address it right, right now. The, the, the issue here is whether, in fact, whether there's a direct, substantial, and reasonably foreseeable effect on, on U.S. commerce. Each one of those terms has meaning, and the district court addressed them. It's also been addressed in the L.S. Hull case, but here, there, there is no, Judge Brown went through tremendous detail in looking at what the allegations of the complaint were to see if, in fact, there were allegations of a direct, substantial, reasonably foreseeable effect, and found that, that the plaintiffs had not succeeded in making that, that, that showing, and I think he was right in, in, in doing that. But Judge Pollack's talking about it. You know, reasonably foreseeable calls upon an objective standard. He was talking about intent to effect. You know, perhaps a scienter requirement. How do you deal with that? Well, the question, and, and I don't think it's anything new, the question is whether the, the, whether the defendants in the case targeted, had targeted the United States commerce. I mean, clearly, just the fact that, that, that Magnesite or Magnesia ended up in the United States is not enough to show a direct, substantial, reasonable. Did they show, or did they not assert in the complaint huge increases over a very short period of time that increase in prices that were the result of the alleged price fixing, and therefore increasing the price of Magnesite in the United States by very, very substantial amounts. I mean, assuming the truth of what the complaint says. Well, isn't that enough? Well, I don't think it's enough to just assume that the facts, the, not the facts, assume that the, the general allegations of the complaint, the judge Brown looked at those allegations very specifically. This is, you know, it's similar to Twombly and Nickball. You need to look at it, whether the allegations are plausible and, and judge Brown goes at very great length, paragraph by paragraph, and decides that either the, the allegations, the complaint, or just mere allegations, conclusory allegations, that they raise a, a, a, a study by an expert economist. But when you look at it, as judge Brown did, he found that, in fact, the, the, the expert assumed the truth of what he was trying to prove. He, he introduced regressors in his regression analysis that assumed that there was a price fixing. So the, the result was, was, was obvious from, from the methodology. When you look at, at the, at the effect, what you need to do, and what this court has held in, in both Carper Group and Truro Centro, and what the Fourth Circuit decided in D.K. is you need more, you need to have a, a focus on the United States in, in terms of the effect. There, there seems to be a very substantial factual inquiry by the judge in this, in this case. And taking judicial notice of a number of things without notice, maybe you can comment on that, because I, I thought that the, the, the judges' examination of the issue was really exhaustive and included quite a bit that I don't, we don't usually see at the 12B6 stage.  this was a 12B1. It goes to jurisdiction as he was considering it, and he was perfectly, perfectly appropriate in, in looking in close detail at, at whether the court had jurisdiction that the, and, and there are plenty of cases which we cite in, in our brief as well that, that, that talk about how the judge is entitled to make a connection with an issue of jurisdiction. And, and let me just address briefly the plaintiff's policy argument that affirming Judge Brown will, will not injure, will injure antitrust enforcement and cartel conduct. Judge Brown's decision is not, is not groundbreaking. It's consistent, again, with, with Carper Group and, and Turo Centro. And in, in fact, you have to look at the, at the First Circuit opinion in Nippon paper. That, that's a case, a criminal case in which the First Circuit looked at a case, it was subject to jurisdiction. And so, and they found that under the effects test, it was. So if, if the United States wants to bring a criminal cartel case, first question is, does it involve import commerce or the defendants in that case directly importing? If, if they are, then fine, the FTAA doesn't apply and, and they have jurisdiction. If not, step two is look at the effects test. And, and that's exactly what the First Circuit did in Nippon paper. To your knowledge, Mr. Weiner, has Congress ever explicitly say, said that the statute is constitutional, is jurisdictional? Yes, Your Honor. There, there are, maybe it's a loose term of the word, but the, the legislative history does include many examples of, of, of reference to the statute being a jurisdictional statute. And, so as I was saying, I don't think that, that there's any, any danger of, of a lack of enforcement of, of, of criminal law based on, based on any reading here. And in fact, it's very consistent with, with where the Third Circuit has been in the past. I'm a little puzzled about what it means to say that the statute is jurisdictional. The statute is one that defines limits, puts constraints on, what's an assertable cause of action under the Sherman Act. That's really what the statute's about, is it not? Absolutely. And, if one, if one, not in this setting, brings a, an ordinary Sherman Act case that's wholly domestic, whatever, isn't, isn't the question that you look at the complaint and decide whether it states a cause of action. But you don't count that in, in jurisdictional terms, do you? In terms of a wholly domestic case, no. I think that, that's correct. But the FTA starts off by saying the Sherman Act shall not apply, which sounds as if it does relate to the jurisdiction of the court. Mr. Weiner, your time is up. Thank you, Your Honor. Thank you very much. Mr. Isaacson. Can I just address one point to the panel that was raised? I'm sorry. I normally don't allow re-argument or continuation of the argument. Yes, Mr. Isaacson. Your Honor, the district court did not conduct a standard Twombly analysis. Twombly does not involve a factual review or review of evidence or judicial notice of the types of things that happened here. Twombly requires a plausibility analysis of the facial allegations of the complaint. No one is questioning that this complaint plausibly and correctly alleges actual dates and participants in an international cartel. All that is questioned is the effect on U.S. commerce. The complaint explains that the cartel comprises over 70% of the exports of China from Magnesite and that those exports from China comprise over 80% of the Magnesite received in the United States. Moreover, this affected a price increase in the United States of 21%. The district court, without discovery, testimony, any conversation with the plaintiff's expert rejected the expert report based on a series of questions. This is unheard of at the motion-to-dismiss stage. The issue is raised, well, your contracts, individual contracts are not linked to the price-fixing conspiracy here. Contracts are not stamped. This is the subject of price-fixing. We have shown contracts and transactions representing over $100 million of sales of Magnesite into the United States each year. We have shown the complaint outlines USITC statistics of hundreds of millions of dollars of imports of Magnesite from China, again, which are dominated by this cartel. The SIENTA requirement that has been advocated is a new requirement. It's even more dangerous than SIENTA being subjective versus objective because it's asking for the cartel to uniquely affect the United States. But did Judge Brown really apply the standard? I think maybe I got it wrong, but I think maybe your adversary said it's in there, but he's citing it to another case, and maybe he didn't apply that standard at all. I think he foursquare applied it. In fact, Min Metal's brief, own brief, says at page 21 and 22, the district court was explaining that an intent to affect U.S. commerce by defendants could be inferred from Chinese industry prices only if the Chinese industry as a whole charged U.S. buyers uniquely higher prices. That is our complaint with the district court. One other issue is how the district court treated the sovereign compulsion issue. That also should not have been treated at the motion-to-dismiss stage. That is an issue of disputed fact because the record before the district court, including the complaint and supporting evidence, showed the price-fixing complaint up here was the product of voluntary agreements, not governmental compulsion, and the CCCMC, the association of which we have complained, is a nongovernmental organization. Wouldn't that be an affirmative defense? Yes, and it has been strictly cut back based on factual findings of the district court, largely based upon matters of judicial notice, and it is important that the district court be instructed that that issue should be resolved only after full discovery, just as any other case would proceed. What we are asking for here, Your Honor, is that this case proceed like any other case alleging price-fixing in the United States, and no case has been presented to you applying the FTIA to price-fixing in the United States. It is not a threshold issue in any such case. Mr. Isaacson, thank you very much. Thank you. And thanks to all counsel for a very well-presented argument to take the case under advisement. Thank you. Good afternoon.